OPINION
On February 7, 1999, appellee, Lynette Gallina, was operating her husband's vehicle when she was involved in an accident caused by Wendy Stallard, the tortfeasor herein. Two passengers were in appellee's vehicle, Donna Willis and Tara Willis. All the individuals in appellant's vehicle sustained injuries.
At the time of the accident, the tortfeasor was insured under a policy issued by Republic Mutual Insurance Company aka The Celina Group. Said policy contained liability limits of $12,500 per person/accident. Appellee was insured under a policy issued by appellant, Motorists Mutual Insurance Company. Said policy contained underinsured/uninsured limits of $100,000/$300,000.
On February 12, 1999, appellant's claims adjustor, Linda Nichols, contacted appellee and learned of the extent of the injuries. On that same day, Ms. Nichols learned of the tortfeasor's insurance limits.
In November of 1999, appellant agreed to accept from the tortfeasor's carrier $7,500 as payment in full for the property damage sustained by appellee, even though appellant had paid appellee $11,585.06. Appellant signed a release of the tortfeasor for the property damage only.
On January 11, 2000, appellee's counsel verbally notified Ms. Nichols that the tortfeasor's carrier offered the policy limits of $25,000 to appellant and her two passengers. On June 7, 2000, appellee executed a release of the tortfeasor for the $25,000. Said amount was divided among the three in proportion to their respective medical bills. Appellee received $7,500.
On June 27, 2000, appellee submitted a claim with appellant for underinsured motorists coverage. Appellant denied said claim on November 7, 2000.
On December 18, 2000, appellee filed a declaratory judgment action seeking a declaration that she was entitled to the requested coverage. On January 22, 2001, appellee filed an answer and counterclaim claiming appellee violated the provisions of the insurance contract by settling with the tortfeasor and executing a release thereby prejudicing appellant's subrogation rights. Appellant also claimed appellee failed to notify them in writing of the tentative settlement thereby depriving appellant of the opportunity to advance payment, and violated the exhaustion clause.
On June 29, 2001, appellant filed a motion for summary judgment. By judgment entry filed July 10, 2001, the trial court denied said motion.
Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF/APPELLEE LYNETTE GALLINA AND OVERRULING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT/APPELLANT MOTORISTS MUTUAL INSURANCE COMPANY.
 BY EXECUTING THE RELEASE IN FAVOR OF THE TORTFEASOR WITHOUT THE CONSENT AND APPROVAL OF MOTORISTS, THE PLAINTIFF/APPELLEE COMMITTED A MATERIAL BREACH OF THE INSURANCE CONTRACT AND CAUSED UNDUE PREJUDICE TO MOTORISTS' POTENTIAL SUBROGATION RIGHTS, THEREBY RELIEVING MOTORISTS OF ANY OBLIGATION TO PAY UNDERINSURED MOTORISTS BENEFITS TO PLAINTIFF/APPELLEE.
 PLAINTIFF/APPELLEE VIOLATED THE EXHAUSTION CLAUSE IN THE MOTORISTS POLICY, THEREBY RELIEVING MOTORISTS OF ANY OBLIGATION TO PAY UNDERINSURED MOTORISTS BENEFITS TO PLAINTIFF/APPELLEE.
 I
Appellant claims the trial court erred in denying its motion for summary judgment. We disagree.
Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in Stateex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 448:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35.
The main issue is whether appellee violated provisions in the underinsured motorist insurance policy by failing to give notice of the settlement with the tortfeasor and granting a release to the tortfeasor, thereby negating appellant's subrogation rights.
The insurance contract provides in pertinent part the following:
ADDITIONAL DUTY AFTER AN ACCIDENT OR LOSS
 A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the insured and the insurer of a vehicle described in Section 2. of the definition of uninsured motor vehicle, and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such uninsured motor vehicle.
See, Policy Endorsement PP 70 07 12 97, Page 3.
 Uninsured motor vehicle means a land motor vehicle or trailer of any type:
* * *
 To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the limit of liability for this coverage.
See, Policy Endorsement PP 70 07 12 97, Page 1.
OUR RIGHT TO RECOVER PAYMENT.
 If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
 Whatever is necessary to enable us to exercise our rights; and
Nothing after loss to prejudice them.
See, Personal Auto Policy, General Provisions, Page 9.
* * *
We will pay under this coverage only if 1. or 2. below applies:
 The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or
See, Policy Endorsement PP 70 07 12 97, Page 1.
Appellant argues appellee failed to follow the requirements for notice to them and therefore, she is precluded from seeking recovery under her underinsured motorists coverage. In support, appellant cites the case ofLuckenbill v. Midwestern Indemnity Company (June 1, 2001), Darke App. No. 01-CA-1536, unreported, wherein our brethren from the Second District noted "if an insured destroys an insurers right to subrogation by releasing the tortfeasor, the insurer is prejudiced." (Citations omitted.) As cited supra, the provisions for notice sub judice state that the notice be "in writing" and that said writing inform appellant of a "tentative settlement between the insured and the insurer" of the underinsured tortfeasor.
The undisputed facts are as follows:
The accident occurred on February 7, 1999.
 On February 12, 1999, appellant was made aware of the accident, the tortfeasor's limits and the possibility of an underinsured motorists claim.
 A notation dated May 14, 1999 in appellant's claim file acknowledged that an underinsured motorists claim was likely.
 On August 13, 1999, appellant's claims adjustor noted a "block for reserves" for appellee's claim.
 In November of 1999, appellant's subrogation adjustor faxed the property damage pay out information to the tortfeasor's carrier and agreed to accept $7,500 as payment in full for the property damage incurred by appellee even though appellant had paid appellee $11,585.06. The subrogation adjustor signed a release of the tortfeasor for "Property Damages Only."
 On January 11, 2000, appellee's counsel notified appellant that the tortfeasor's carrier had offered the limits to all three individuals involved in the accident.
 On June 7, 2000, appellee executed a release of the tortfeasor and split the limits with the other two parties.
 On July 27, 2000, appellee submitted her claim for underinsured motorists coverage.
On November 7, 2000, appellee's claim was denied.[1]
From these undisputed facts, we will address whether appellee has fulfilled her requirements under the insurance contract. We note terms are to be given their "common, ordinary, and accepted meaning." AmericanChemical Society v. Kinney (1980), 62 Ohio St.2d 258, 260, citing Statev. Singer (1977), 50 Ohio St.2d 103, 108.
We find there can be no contest that appellant was aware very early on that appellee would be seeking underinsured motorists coverage and that appellant had made a good faith investigation into the tortfeasor's collectability.[2] In this regard, appellant readily signed a "Release" of the tortfeasor for the property damage. It is also undisputed that appellee's counsel's notice of January 11, 2000 was not in writing as required under the insurance contract. We find the substantial case history as disclosed by appellant's claim file, specifically the notation of appellee's counsel's statement as to the proposed settlement, qualified as substantial compliance even though the notice was only verbal.
It is appellant's position that the January 11, 2000 disclosure of the proposed settlement was deficient because it did not specifically state how much appellee was going to settle for with the tortfeasor so that appellant could advance the money to appellee and protect its subrogation rights. The specific language of the insurance contract states the notice shall disclose the "tentative settlement between the insured and the insurer" of the underinsured tortfeasor. The notice sub judice disclosed the tentative settlement ($25,000) between all the injured parties and the tortfeasor's carrier, but did not disclose what appellee was going to receive. We do not find this to be a deficient notice under the insurance contract. Appellee did not settle and release the tortfeasor until six months after the notice. In May of 2000, appellant attempted to obtain further medical bills and information. See, Letter of Ms. Nichols to Appellee's Counsel, dated May 26, 2000. This correspondence exemplifies an awareness of increasing claims. Appellant did not attempt to avail itself of the pay out provision to protect its own subrogation rights.
Appellant argues appellee's act in signing the release prejudiced its rights to collect against the tortfeasor. It is painfully clear from appellant's release of the tortfeasor for the property damage and its lack of initiative in protecting its subrogation rights that appellant never anticipated the necessity of paying appellee the proposed settlement.
Based upon the specific facts of this case, we find appellee did not violate the letter nor the spirit of its agreement with appellant. We find appellee's January 11, 2000 notice fulfilled her contractual obligation to appellant. The trial court did not err in granting summary judgment to appellee.
The sole assignment of error is denied.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
Hon. Julie A. Edwards, P.J. Hon. Sheila G. Farmer, J. Hon. John W. Wise, J. concur.
[1] Dates and references were taken from appellant's discovery packet filed on May 16, 2001.
[2] The claim file discloses that a private firm was hired to investigate the tortfeasor's solvency.